**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

CASE NO. 20-23410-MC-SCOLA/TORRES

IN RE APPLICATION OF MARY ANN JAMES DE HOLGUIN,

Movant.
_______________________________________/

**REPORT AND RECOMMENDATION ON APPLICATION FOR JUDICIAL ASSISTANCE PURSUANT TO 28 U.S.C. § 1782**

The matter before this Court is an application for discovery, brought pursuant to 28 U.S.C. § 1782, filed by Applicant Mary Ann James de Holguin ("Applicant" or "Holguin") on August 17, 2020. [D.E. 1]. The application seeks the production of documents and depositions from Shutts & Bowen LLC and Maria Del Pilar Rubio ("Respondents"), an entity and an individual residing, operating, or otherwise located in the Southern District of Florida. Respondents filed a response in opposition to the application on September 9, 2020 [D.E. 11], and Holguin's reply followed on September 16, 2020. [D.E. 15].[1]

On September 9, 2020, Respondents also filed a motion to strike certain allegations in the application, which Respondents claim are false, impertinent, immaterial, and scandalous. [D.E. 12]. The motion seeks additional sanctions against Holguin and her counsel. *Id.* Holguin filed a response in opposition to the motion to strike on September 18, 2020 [D.E. 17] to which Respondents replied on

---

[1] The Honorable Judge Robert N. Scola, Jr. referred the motion to the Undersigned Magistrate on August 18, 2020. [D.E. 3].

September 25, 2020. [D.E. 18]. Two days prior to filing her response to the motion to strike, Holguin moved for leave to file under seal and for an *in camera* review of certain communications allegedly between Holguin's deceased husband, Rodrigo Ernesto Holguin Lourido ("Decedent"), and Ms. Rubio. [D.E. 14]. Respondents filed a response in opposition to the motion for leave and for *in camera* review on September 30, 2020 [D.E. 19], and Holguin's reply followed on October 7, 2020. [D.E. 21].[2]

In addition, Respondents filed a cross motion to compel Holguin and her counsel, among other relief sought, to return all documents and other communications between Respondents and Decedent to Respondents. [D.E. 20]. Holguin filed a response in opposition to the cross motion to compel on October 14, 2020 [D.E. 22] to which Respondents replied on October 21, 2020. [D.E. 13]. Thus, the application, the motion to strike, the motion for leave and *in camera* review, and the cross motion to compel are now ripe for disposition. Following our review of the record, the relevant governing legal authorities, and the arguments raised by both parties, we hereby **RECOMMEND** that:

1. The [D.E. 1] application be **DENIED**;

2. The [D.E. 12] motion to strike be **GRANTED in part** and **DENIED in part**;

3. The [D.E. 14] motion for leave and *in camera* review be **DENIED**; and

[2] The Honorable Judge Robert N. Scola, Jr. referred the [D.E. 12] motion to strike and the [D.E. 14] motion for leave and *in camera* review to the Undersigned Magistrate, respectively, on September 11, 2020 and September 18, 2020. [D.E. 13, 16].

4. The [D.E. 20] cross motion to compel be **DENIED**.

## *I. BACKGROUND*

The underlying dispute arises from the death of Decedent on December 29, 2019 of natural causes in his home outside of Cali, Colombia. At the time of his death, Decedent and Holguin were legally married for at least twenty years—the parties disagree if they were legally married for longer than that. Decedent and Holguin did not have children together, but Decedent had three children from a previous marriage: Jaime Holguin Godin, Camila Holguin Godin, and Eduardo Holguin Godin ("Decedent's Children"). Besides having assets in Colombia, Decedent had assets in the United States, including Florida.

Decedent thus allegedly left a Last Will and Testament, dated June 18, 2019, that disposes of his assets in Florida and the United States (the "Florida Will").[3] Ms. Rubio, a tax associate with Shutts & Bowen LLP in Miami, Florida, began representing Decedent in 2017 and assisted him in preparing the Florida Will and served as witness to it. Pursuant to the Florida Will, Decedent intentionally omitted

[3] Besides the Florida Will, Decedent has other potentially relevant estate planning documents. First, in 1999, Applicant allegedly agreed to waive any and all interest and/or entitlement to Decedent's assets and estate pursuant to two prenuptial agreements. Respondents consider these prenuptial agreements as evidence that Decedent has long intended to leave Applicant nothing upon his death, but Applicant alleges they are invalid because they were signed when Decedent and Applicant were already legally married. Second, there is a Memorandum of Understanding, dated October 7, 2019, entered into by Decedent and Applicant under Colombian law (the "MOU"). Respondents drafted the MOU, and Applicant alleges that it involves the distribution of several of the properties that were covered by the prenuptial agreements. Third, Applicant claims there is a second Will that may exist in Colombia.

Holguin and her descendants as beneficiaries under it. Instead, Decedent bequeathed his tangible personal property of every kind to his personal representative, his daughter Camila. Further, Decedent gave his interests in real property to the Trust Agreement of the Yucao Trust, dated December 29, 2016.

A few months after Decedent's death, Camila initiated the administration of Decedent's estate in the Circuit Court for Miami-Dade County, Florida, Probate Division, to administer Decedent's assets located in the United States (the "Florida Probate Proceeding"). On September 18, 2020, Holguin filed a counter-petition for administration and revocation of probate in the Florida Probate Proceeding. [D.E. 20-1]. The counter-petition seeks to appoint Holguin as Decedent's personal representative, invalidate the Florida Will, and distribute Decedent's assets via intestacy. According to the counter-petition, Ms. Rubio had a romantic relationship with Decedent and exercised under influence over him in the procurement of the Florida Will, and the Florida Will is invalid under Colombian law to the extent it disinherits Holguin.

The counter-petition is not the only proceeding in Florida court where Holguin challenges the administration of Decedent's estate. On October 2, 2020, Holguin filed a complaint in the Eleventh Judicial Circuit of Florida against Camila in both her individual capacity and as Decedent's personal representative (the "Second Florida Proceeding"). [D.E. 23-1]. Like the counter-petition, Holguin challenges the validity of the Florida Will due to undue influence by Ms. Rubio and seeks $3,000,000 in cash and sole ownership interests in certain real property owned by Decedent.

The foreign action that spurred the 28 U.S.C. § 1782 application, however, is an intestate succession claim filed by Decedent's Children on or around October 20, 2020 in the Family Law Division Court in Cali, Colombia (the "Colombian Proceeding"). [D.E 25-1]. Holguin was first notified that the Colombian Proceeding would be filed on July 7, 2020. Thus, in preparation to assert her rights as Decedent's wife in the Colombian Proceeding, Holguin requested various documents from Respondents concerning Decedent's estate, most notably documents related to the Yucao Trust. However, besides providing a copy of the Florida Will, Respondents determined that Holguin did not have a right to the requested documents.

As a result, Applicant now moves under 28 U.S.C. § 1782 for an order from this Court compelling Respondents to produce certain documents and all communications between them and Decedent. Specifically, the application seeks production of the previously requested documents and new documents, which include: (i) a copy of any written statement directing the disposition of the Decedent's tangible personal property; (ii) a copy of the Trust Agreement of the Yucao Trust; (iii) a copy of any additional testamentary documents signed by the Decedent disposing of his assets upon his death or additional documents identifying the covered assets; (iv) a copy of any Spanish translation of the Florida Will; and (v) all communications between Ms. Rubio and Shutts Bowen LLC and Decedent. Respondents claim, among other arguments, that the application should be denied because the documents she seeks here can be obtained in either the Florida Probate Proceeding, the Second Florida Proceeding, or the Colombian Proceeding. Applicant, according to Respondents,

therefore fails to meet her burden in establishing entitlement to the discovery sought here.

## *II. LEGAL STANDARD*

Section 1782 seeks "to provide federal court assistance in gathering evidence for use in foreign tribunals." *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 247 (2004); *see also In the Matter of Lancaster Factoring Co., Ltd.*, 90 F.3d 38, 41 (2d Cir. 1996) (purpose of Section 1782 is to provide "equitable and efficacious procedures in United States courts for the benefit of tribunals and litigants involved in foreign litigation" and to "encourag[e] foreign countries by example to provide similar assistance to our courts.") (internal citations omitted). The statute allows a district court, upon the application of an interested person, to order a person residing or found in the district to give testimony or produce documents for use in a foreign proceeding. 28 U.S.C. § 1782. The statute continues:

> The order may be made pursuant to a letter rogatory issued, or request made, by a foreign or international tribunal or upon the application of any interested person and may direct that the testimony or statement be given, or the document or other thing be produced, before a person appointed by the court. By virtue of his appointment, the person appointed has power to administer any necessary oath and take the testimony or statement. The order may prescribe the practice and procedure, which may be in whole or part the practice and procedure of the foreign country or the international tribunal, for taking the testimony or statement or producing the document or other thing. To the extent that the order does not prescribe otherwise, the testimony or statement shall be taken, and the document or other thing produced, in accordance with the Federal Rules of Civil Procedure.

*Id.*

In order to compel a party to testify or produce documents pursuant to the statute, it must first determine whether a statutory basis exists for the Section 1782 application. The Eleventh Circuit has provided four such statutory bases that must be considered in making this determination: (1) the request must be made "by a foreign or international tribunal," or by "any interested person"; (2) the request must seek evidence, whether it be the "testimony or statement" of a person or the production of a "document or thing"; (3) the evidence must be "for use in a proceeding in a foreign or international tribunal"; and (4) the person from whom discovery is sought must reside or be found in the district of the court ruling on the application for assistance under Section 1782. *In re Clerici*, 481 F.3d 1324, 1331-32 (11th Cir. 2007). If these statutory requirements are met, a district court deciding the application must still make certain that the requested discovery complies with the Federal Rules of Civil Procedure. *See In re Chevron Corp.*, 2012 WL 3636925, at *6 (S.D. Fla. June 12, 2012) ("For example, if the subpoena at issue is directed to a party that resides or is found in the district, same must comply with Fed. R. Civ. P. 45.").

In addition to the statutory requirements, a district court must also consider several discretionary factors before ordering the discovery to be produced. *See Intel Corp.*, 542 U.S. at 264-65. These factors include: (1) whether the respondents are parties in the foreign proceeding; (2) the nature of the foreign tribunal, the character of the proceedings abroad, and the receptivity of the foreign tribunal to assistance from a United States federal court; (3) whether the discovery application conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a

foreign country or the United States; and (4) whether the request is intrusive or burdensome. *Id*. Ultimately, district courts must exercise their discretion in ordering any production under the statute, *see In re Metallgesellschaft*, 121 F.3d 77, 79 (2d. Cir. 1997), and Section 1782 *authorizes* – but does not *require* – a federal court to provide the assistance requested. *Intel Corp.*, 542 U.S. at 247; *see also United Kingdom v. United States*, 238 F.3d 1312, 1319 (11th Cir. 2001) ("[A] district court's compliance with a [Section] 1782 request is not mandatory.").

## *III. ANALYSIS*

Applicant contends that we must grant the application because "[w]ithout Section 1782 relief, the Applicant will be foreclosed from acquiring key evidence and, more importantly, she will be forever barred from uncovering any assets to which she has a legal interest in," [D.E. 1] and that she "will have no access to the discovery she seeks from [Respondents]" [D.E. 15]. On the other hand, Respondents argue that Applicant now has three other more appropriate forums to seek discovery.[4] We agree with Respondents in relation to the two Florida proceedings.[5] Applicant can obtain discovery relief in either the Florida Probate Proceeding or the Second Florida Proceeding. And each is better suited than us to determine if the Florida Will is valid, which is the crux of Applicant's planned defense in the Columbian Proceeding.

---

[4] This is not Respondents only argument why the application should be denied. Respondents make several other arguments that are related to the validity of the Florida Will and privilege, but we leave those substantive arguments for the two Florida state proceedings.

[5] It is possible that Applicant may also obtain discovery relief in the Colombian Proceeding, but we do not need to consider this argument.

Indeed, Respondents are counsel for the opposing parties in both Florida proceedings. Thus, if the Florida state courts decide the documents requested in the application should be provided to Applicant, they can compel the parties and Respondents to produce such documents. *See* Fla. R. Civ. P. 1.380 ("An application for an order to a party [compelling discovery] may be made to the court in which the action is pending . . ."). Applicant argues that Respondents are not parties to the Florida proceedings, but this argument fails because Florida courts can compel third party attorneys to produce documents. *See Morgan, Colling & Gilbert, P.A. v. Pope, M.D.*, 756 So. 2d 201, 201 (Fla. 2d DCA 2000) (denying a motion to quash an order granting a motion to compel discovery directed against nonparty attorneys for the plaintiff). Moreover, the Florida Rules of Civil Procedure and the Florida Probate Rules provide a mechanism for Applicant to seek a subpoena against third parties, such as Respondents, to produce the documents.[6]

Respondents also argue that the Florida litigation will only administer Decedent's assets that were located in the U.S. and that the Colombian Proceeding is a separate proceeding with a distinct objective. According to Applicant, this Court can thus only provide the discovery relief she seeks in support of the Colombian Proceeding. It is true that the Florida litigation will only result in the administration

---

6 Respondents also argue that discovery in the Florida proceedings may be unavailable to them because Respondents plan to object the discovery requests in those forums as well. This is irrelevant. We are not recommending to deny the application because Applicant is guaranteed discovery relief in Florida courts. We are doing so because the Florida proceedings are better suited to adjudicate the merits of the underlying dispute, if the Florida Will is valid. And if the Florida courts determine that the discovery relief is unavailable to Applicant, *i.e.* due to privilege, the same would be true here.

of Decedent's assets located in the U.S. But Applicant does not specify a single document requested in her application that is only relevant to the Florida proceedings and not to the Colombian Proceeding. And from our review, the only documents requested in the application appear to be related to the Florida Will, all of which are under the purview of the Florida courts. Applicant's final argument is therefore unavailing.

Because Applicant will have the opportunity to request subpoenas and seek discovery in either the Florida Probate Proceeding or the Second Florida Proceeding to support her defense in the Colombian Proceeding, there is no need for this proceeding. *See In re Jagodzinski*, 2019 WL 1112389, *7 (S.D. Fla. Jan. 15, 2019) (finding that a district court may order a person or entity to produce documents for use in a proceeding in a foreign or international tribunal, but there is no requirement to do so even if the statutory requirements of Section 1782 are met); *see also Intel Corp.*, 542 U.S. at 264-65 (finding that a court must consider whether an applicant is attempting to use Section 1782 to "circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States"). We therefore recommend that the District Court decline to exercise its discretion under Section 1782 to assist Applicant here.

We last address the three motions filed in relation to the application. We first recommend that Respondent's motion to strike should be **GRANTED in part** and **DENIED in part**. Even though we do not need to determine if the allegations against Ms. Rubio have merit, the allegations related to her having a romantic

relationship with Decedent are now irrelevant in this proceeding. Thus, Respondent's motion to strike the allegations related to Ms. Rubio having a romantic relationship with Decedent from the public record that appear in all filings in this proceeding should be **GRANTED**. The remaining relief requested by Respondents in their motion to strike should be **DENIED**.

Because we have no need to review the alleged communications between Ms. Rubio and Decedent, we recommend that Applicant's motion for leave and *in camera* review be **DENIED as moot**. And for the same reasons the Florida courts are better suited to provide Applicant discovery relief, Respondents can file a motion in either one of the Florida proceedings to compel Applicant and her counsel to return all documents and other communications between Respondents and Decedent to Respondents. Accordingly, Respondent's cross-motion to compel should be **DENIED**.

## *IV. CONCLUSION*

In the end, Applicant is essentially asking this Court to start a fishing expedition regarding the Florida Will's validity under the guise of a Section 1782 discovery request. We will not take the bait when there are two other proceedings better suited to make that determination. *See United Kingdom*, 238 F.3d at 1319 ("[A] district court's compliance with a [Section] 1782 request is not mandatory."). For the reasons discussed above, we therefore **RECOMMEND** that:

1. The [D.E. 1] application be **DENIED**;
2. The [D.E. 12] motion to strike be **GRANTED in part** and **DENIED in part**;

3. The [D.E. 14] motion for leave and *in camera* review be **DENIED**; and

4. The [D.E. 20] cross motion to compel be **DENIED**.

Pursuant to Local Magistrate Rule 4(b) and Fed. R. Civ. P. 73, the parties have fourteen (14) days from service of this Report and Recommendation within which to file written objections, if any, with the District Judge. Failure to timely file objections shall bar the parties from *de novo* determination by the District Judge of any factual or legal issue covered in the Report *and* shall bar the parties from challenging on appeal the District Judge's Order based on any unobjected-to factual or legal conclusions included in the Report. 28 U.S.C. § 636(b)(1); 11th Cir. Rule 3-1; *see, e.g., Patton v. Rowell,* 2017 WL 443634 (11th Cir. Feb. 2, 2017); *Cooley v. Comm'r of Soc. Sec,* 2016 WL 7321208 (11th Cir. Dec. 16, 2016).

**DONE AND SUBMITTED** in Chambers at Miami, Florida, this 2nd day of December, 2020.

/s/ *Edwin G. Torres*
EDWIN G. TORRES
United States Magistrate Judge